**United States District Court**
**District of Massachusetts**

|  |  |
|---|---|
| ) | |
| MARK BETTENCOURT, Individually ) | |
| and On Behalf of All Others ) | |
| Similarly Situated, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 17-12548-NMG |
| JEANNE D'ARC CREDIT UNION and ) | |
| DOES 1 Through 100, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff Mark Bettencourt ("Bettencourt" or "plaintiff") brings this putative class action against Jeanne D'Arc Credit Union and numerous unnamed potential parties who are agents, partners, joint venturers, subsidiaries and/or affiliates of that financial institution (collectively "JDCU" or "defendants"). Bettencourt alleges that JDCU improperly charged him and other customers overdraft fees notwithstanding balances in their respective checking accounts sufficient to defray the subject purchases. Bettencourt claims that JDCU's policy constitutes, among other things, a breach of contract and a violation of Regulation E of the Electronic Fund Transfer Act

("the EFTA"), 15 U.S.C. § 1693 et seq.  He seeks to certify

three classes comprising similarly situated customers of JDCU.

Pending before this Court is defendants' motion to dismiss.

For the following reasons, that motion will be allowed, in part,

and denied, in part.

I.   **Background**

A.   **Facts**

Bettencourt is a resident of Hopkinton, New Hampshire.

JDCU is a credit union headquartered in Lowell, Massachusetts,

with numerous branches in Massachusetts and one office in New

Hampshire.  At some point before 2014, Bettencourt opened a

checking account with JDCU.

In creating that account, plaintiff entered into two

contracts with defendants.  The first agreement was titled

"Terms and Conditions of Your Account" ("the Account

Agreement").  That contract prescribed the rights and

obligations of the account holder and the credit union.

Included in the agreement was JDCU's policy on withdrawals and

overdraft fees.  An overdraft fee is a charge imposed by a

financial institution when a customer makes a purchase for an

amount that exceeds his or her account balance.

There are two methods by which an overdraft fee can be

calculated.  The first is based on the "ledger" or "actual

balance" which is the standing balance of the member's account

-2-

less any payments that have actually been processed.  A second method is based on the "available balance" which is the standing balance less any "holds" on deposits and pending debits that have not yet been posted.  The "available balance", therefore, may be substantially lower than the "actual balance".

The Account Agreement provides, in relevant part, that:

1) We [JDCU] may determine the amount of <u>available funds</u> in your account for the purpose of deciding whether to return an item for <u>insufficient funds</u> at any time between the time we receive the item and when we return the item or send a notice in lieu of return . . . [and [w]e need only make one determination, but if we choose to make a subsequent determination, the <u>account balance</u> at the subsequent time will determine whether there are <u>insufficient available funds</u>;

2) [W]e may, at our discretion, honor withdrawal requests that overdraw your account . . . [but] the fact that we may honor withdrawal requests that overdraw the <u>account balance</u> does not obligate us to do so later; and

3) Our payment policy will cause your largest, and perhaps most important, items to be paid first . . . but may increase the overdraft or NSF fees you have to pay if <u>funds are not available</u> to pay all of the items . . . [and] [i]f an item is presented <u>without sufficient funds</u> in your account to pay it, we may, at our discretion, pay the item (creating an overdraft) or return the item (NSF).

(emphasis added).  The Account Agreement also contains a so-called Funds Availability Policy which describes JDCU's practice of withholding availability of certain deposits for some period of time.

The second agreement that Bettencourt entered into with JDCU was an "Opt-In Contract" which describes JDCU's overdraft

service policy for non-recurring transactions as required by
Regulation E of the EFTA. 12 C.F.R. § 1005.17.  The contract
provides that JDCU will "not authorize and pay overdrafts caused
by one-time debit card transactions unless you authorize us to
do so".  It defines "overdraft" as

> occur[ing] when you do not have <u>enough money</u> in your
> account to cover a transaction, but we pay it anyway.

(emphasis added).

Neither the Account Agreement nor the Opt-In Contract
defines the terms "insufficient funds", "available funds" or
"account balance" nor does the Funds Availability Policy link
the availability of funds for withdrawal to the charging of
overdraft fees.  Nor does either agreement state that overdraft
fees will be charged as a result of holds placed on funds
designated for pending transactions.  JDCU maintains, however,
that the agreements, considered together, clearly articulate
that overdraft fees are calculated based on the account holder's
"available balance" rather than his or her "actual balance".

Bettencourt agreed to opt in to JDCU's overdraft service
for nonrecurring transactions.  In November, 2014, he was
charged an overdraft fee despite having a sufficient "actual
balance" to cover the subject transaction.  Because his
"available balance" was insufficient, however, he was assessed a
fee.  Plaintiff asserts that he has a reasonable belief that a

complete review of his and JDCU's records will confirm multiple
instances where JDCU improperly charged him overdraft fees for
transactions despite there being sufficient funds in his account
to satisfy them.

### B.   Procedural History

In December, 2017, Bettencourt filed a complaint in this
Court alleging: 1) breaches of the Opt-In Contract and the
Account Agreement; 2) breach of the implied covenant of good
faith and fair dealing; 3) equitable claims for unjust
enrichment and money had and received; and 4) violations of
Regulation E of the EFTA.  Plaintiff submits that the Account
Agreement and Opt-In Contract unambiguously provide that
overdraft fees will be calculated based on the account holder's
"actual balance".  He asserts, therefore, that JDCU's practice
of charging overdraft fees based on the account holder's
"available balance" amounts to breaches of both contracts and of
JDCU's obligation to provide full and accurate disclosure under
the EFTA.

In March, 2018, JDCU filed a motion to dismiss for failure
to state a claim.  Defendants refute plaintiff's reading of the
contracts and assert that they unambiguously provide that
overdraft fees will be calculated based on the "available
balance".  They maintain that there was neither a breach of
contract nor a violation of JDCU's obligations under federal

law.  Moreover, JDCU contends that plaintiff's claims under
Regulation E are otherwise precluded by the safe harbor
provision of the EFTA and/or time-barred.

## II.  **Motion to Dismiss**

### A.   **Legal Standard**

To survive a motion to dismiss, a complaint must contain
sufficient factual matter, accepted as true, to "state a claim
to relief that is plausible on its face." Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 570 (2007).  In considering the merits of
a motion to dismiss, the Court may look only to the facts
alleged in the pleadings, documents attached as exhibits or
incorporated by reference in the complaint and matters of which
judicial notice can be taken. Nollet v. Justices of Trial Court
of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248
F.3d 1127 (1st Cir. 2000).  Furthermore, the Court must accept
all factual allegations in the complaint as true and draw all
reasonable inferences in the plaintiff's favor. Langadinos v.
Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  Although a
court must accept as true all of the factual allegations
contained in a complaint, that doctrine is not applicable to
legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662 (2009).

### B.   **Counts I & II: Breach of Contract**

Under Massachusetts law, contract interpretation is
generally a question of law but where the Court finds that the

-6-

terms of the contract are ambiguous, their interpretation is a question of fact for the jury. <u>Salls</u> v. <u>Dig. Fed. Credit Union</u>, 349 F. Supp. 3d 81, 86 (D. Mass. 2018).  Terms of a contract may be found ambiguous only if they are inconsistent on their face or are subject to a reasonable difference of opinion as to their meaning. <u>Id.</u> (citing <u>Fashion House, Inc.</u> v. <u>K Mart Corp.,</u> 892 F.2d 1076, 1083 (1st Cir. 1989)).

Both parties cite a plethora of caselaw from around the country involving similar contracts and claims regarding overdraft fees.  The Court will, however, rely on two cases which it finds particularly persuasive.

The first is <u>Salls</u> v. <u>Digital Federal Credit Union</u> in which another session of this Court found that the subject agreements were ambiguous. <u>Salls</u>, 349 F. Supp. 3d at 88.  That case involved both an Account Agreement and an Opt-In Agreement which included similar language to the agreements at issue here.  For example, the Opt-In Agreement there contained identical language with respect to when an overdraft occurs and the Account Agreement there included references to "insufficient funds available" and "available balance" in the context of overdraft fees. <u>Id.</u> at 87-88.  In addition, the Account Agreements in both cases contain Funds Availability Policies describing when funds may not be immediately available. <u>Id.</u> at 88.

Despite those references, however, the District Court in
Salls concluded that the agreements were ambiguous because 1)
the defendant did not define the term "available balance" as
including deductions for pending transactions and 2) neither
agreement referred to the Funds Availability Policy for
explanation of how an account holder's balance would be
calculated for the purpose of overdraft fees nor how that policy
was related to the calculation of overdraft charges. Id.  The
Court determined that the ambiguity presented an issue of fact
inappropriate for resolution on a motion to dismiss and thus
held that the plaintiff had stated a plausible claim for both
breach of contract and violation of Regulation E of the EFTA.
Id. at 89-90.

The second well-reasoned decision was rendered in Walker v.
People's United Bank, 305 F. Supp. 3d 365, 374-76 (D. Conn.
2018), in which the District Judge held that the subject Account
Agreement and Opt-In Contract were ambiguous as to the proper
method for calculating overdraft charges and that plaintiff had
stated a plausible claim for both breach of contract and
violation of Regulation E of the EFTA.  The agreements there
also contained strikingly similar language to those at issue
here, including references to "insufficient funds" and
"insufficient available funds". Id. at 371.  Similar to the
decision in Salls, the Court in Walker found that there was "a

reasonable basis for a difference of opinion concerning the language of the [agreements]" and thus plaintiff had stated a plausible claim for relief. Id. at 374-76.

This Court concludes that after construing the subject Agreements together, they are susceptible to a reasonable difference of opinion as to the meaning of the overdraft provisions and thus are ambiguous.  While the agreements refer to "available funds", "insufficient funds", "insufficient available funds", "enough money" and "account balance", neither explicitly defines the meaning of those terms or how they relate to the calculation of overdraft fees.  Moreover, nowhere in either agreement does JDCU explain that pending transactions will be deducted from the account holder's balance for purposes of calculating overdraft charges.  Finally, while the Funds Availability Policy does notify account holders that "holds" will be placed on deposits in certain situations, it does not explain how the availability of funds relates to the calculation of overdraft fees.

JDCU contends that Bettencourt's reading of the Agreements would render the Funds Availability Policy a nullity and thus should be rejected but plaintiff's reasonable contrary interpretation of the agreements is consistent with that policy. Defendants could still enforce the Funds Availability Policy by

simply declining to pay for a transaction resulting in insufficient funds but forego charging an overdraft fee.

Because plaintiff's interpretation of the contracts is not unreasonable nor necessarily inconsistent with other provisions of those agreements, he has stated plausible claims for breach of contract.  JDCU's motion to dismiss Counts I and II of the complaint will therefore be denied.

### C.    Count III: Breach of Implied Covenant of Good Faith and Fair Dealing

"Under Massachusetts law, a covenant of good faith and fair dealing is implied in every contract." Shaulis v. Nordstrom, Inc., 120 F. Supp. 3d 40, 54 (D. Mass. 2015) (citing UNO Rests., Inc. v. Bos. Kenmore Realty Corp., 805 N.E.2d 957, 964 (Mass. 2004)).  A plaintiff asserts a claim for breach of that covenant "when one party violates the reasonable expectations of the other". Salls, 349 F. Supp. 3d at 89 (quoting Robert & Ardis James Found v. Meyers, 48 N.E.3d 442, 449 (Mass. 2016)).

Because Bettencourt could have reasonably expected that the overdraft fees would be assessed based on the "actual balance", rather than the "available balance", as discussed above, the Court concludes that he has also stated a plausible claim for breach of the implied covenant of good faith and fair dealing. Salls, 349 F. Supp. 3d at 89.  Accordingly, JDCU's motion to dismiss Count III of the complaint will also be denied.

### D.   Counts IV & V: Unjust Enrichment and Money Had and Received

To state a claim for unjust enrichment, a plaintiff must prove 1) a benefit conferred upon the defendant by plaintiff, 2) an appreciation or knowledge of the benefit by the defendant, and 3) the acceptance or retention of the benefit by the defendant under circumstances which make such acceptance or retention inequitable. Stevens v. Thacker, 550 F. Supp. 2d 161, 165 (D. Mass. 2008).  The availability of an adequate remedy at law, even if ultimately unviable, precludes a claim for unjust enrichment. Shaulis v. Nordstrom, Inc., 865 F.3d 1, 16 (1st Cir. 2017).

Bettencourt claims both breach of contract and violations of the EFTA.  Those available causes of action are adequate remedies at law.  He does not allege that JDCU was unjustly enriched through conduct falling outside the scope of the contract but rather asserts that the improper benefit was conferred as a result of the breach itself. Salls, 349 F. Supp. 3d at 89.  Because the contracts explicitly encompass the dispute, Bettencourt's equitable claims for unjust enrichment and money had and received are precluded.  JDCU's motion to dismiss Counts IV and V of the complaint will, therefore, be allowed.

**E.    Count VI: Violations of Regulation E of the EFTA**

The EFTA establishes the rights of consumers and the responsibilities of all participants in an electronic funds transfer. See 15 U.S.C. § 1693 et seq.  Regulation E implements the Act and requires, among other things, the full and accurate disclosure of a financial institution's overdraft services and the securing of a customer's affirmative consent before charging such fees. 12 C.F.R. § 1005.1 et seq.  Specifically, Regulation E provides:

> [A] financial institution . . . shall not assess a fee or charge on a consumer's account for paying an ATM or one-time debit card transaction pursuant to the institution's overdraft service, unless the institution: (i) Provides the consumer with a notice . . . segregated from all other information, describing the institution's overdraft service; (ii) Provides a reasonable opportunity for the consumer to affirmatively consent, or opt in, to the service for ATM and one-time debit transactions; (iii) Obtains the consumer's affirmative consent . . . ; and (iv) Provides the consumer with confirmation of the consumer's consent . . . which includes a statement informing the consumer of the right to revoke such consent.

§ 1005.17(b).  The disclosure must also "be clearly and readily understandable". § 1005.4(a)(1).

Bettencourt avers that JDCU violated Regulation E by insufficiently and inaccurately describing its actual overdraft policy and thus failing to obtain his affirmative consent to charge such fees.  Because the language in the two contracts are ambiguous, the Court finds that JDCU did not accurately describe its overdraft policy in a clear and readily understandable

manner such that plaintiff could provide his affirmative consent. <u>Salls</u>, 349 F. Supp. 3d at 90; <u>see also</u> <u>Walker</u>, 305 F. Supp. 3d at 376.  Plaintiff has thus stated plausible claims for violation of Regulation E of the EFTA.

### i.   Safe Harbor

JDCU maintains that it cannot be liable for violations of Regulation E of the EFTA because it used the Federal Reserve Board's model clause for its Opt-In Contract.  The EFTA provides that financial institutions cannot be held liable for

> any failure to make disclosure in proper form if [they] utilized an appropriate model clause issued by the Bureau or the Board.

15 U.S.C. § 1693m(d)(2).  Most courts, however, have interpreted the safe harbor provision to preclude liability only for violations arising from the form (but not content) of that notice. <u>Salls</u>, 349 F. Supp. 3d at 91 (collecting cases).

Bettencourt does not challenge the form of the notice. Rather, he asserts that the content of the Opt-In Contract was inaccurate or misleading.  The safe harbor provision does not protect JDCU from liability here. <u>Id.</u> at 91.

### ii.   Statute of Limitations

JDCU finally asserts that plaintiff's claims for violations of Regulation E are time-barred.  Claims for damages for violations of the EFTA must be brought "within one year from the date of the occurrence of the violation". 15 U.S.C. § 1693m(g).

In interpreting the EFTA's statute of limitations provision, the Court in <u>Salls</u> held that an overdraft fee charged for a non-recurring, pre-authorized transaction constitutes a violation of Regulation E every time that fee is imposed. <u>Salls</u>, 349 F. Supp. 3d at 92.  In other words, just because an overdraft fee occurred outside the limitations period did not disqualify claims for all later charges occurring within that period.  The Court in <u>Salls</u> concluded that the plaintiff's EFTA claims, insofar as they occurred within one year of the filing of the complaint, were not time-barred. <u>Id.</u>

That Court also held, however, that the discovery rule, even if it applied to EFTA claims, did not toll the statute of limitations for those claims occurring outside the limitations period because the factual basis for the cause of action was not inherently unknowable or incapable of detection through the exercise of reasonable diligence. <u>Id.</u> at 92-93 (finding that "had Plaintiff checked her bank statements, she should have known when [she] was charged [her] first overdraft on a positive ledger balance that [Defendant] was <u>not</u> using the ledger balance method to assess overdraft fees" (alterations in original) (internal quotation marks omitted)).

This Court agrees with the Court's reasoning in <u>Salls</u>. Bettencourt is therefore entitled to pursue his claims under the EFTA insofar as the disputed overdraft charges occurred within

one year of the filing of his complaint on December 22, 2017. JDCU's motion to dismiss Count VI of the complaint will thus be allowed, in part, and denied, in part.

### ORDER

For the foregoing reasons, JDCU's motion to dismiss (Docket No. 12) is

1) with respect to Counts IV and V, **ALLOWED;**

2) with respect to Count VI, as to overdraft charges occurring more than one year before the filing of the complaint, **ALLOWED;** and, as to overdraft charges occurring within one year of such filing, **DENIED;** but

3) otherwise **DENIED.**


**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated March 30, 2019